UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

THERON DANIELS,

        Plaintiff,

v.                                    Case No. 3:17-cv-1239-J-34JRK

DENNIS A. VILCHEZ, M.D.,
et al.,

        Defendants.

_____

**ORDER**

**I. Status**

Plaintiff Theron Daniels, an inmate of the Florida penal system, initiated this action on November 3, 2017, by filing a Civil Rights Complaint (Complaint; Doc. 1) pursuant to 42 U.S.C. § 1983. In the Complaint, Daniels names the following individuals as Defendants: (1) Alexis Figueroa, M.D.; (2) Luis Vazquez, M.D.; (3) Dennis A. Vilchez, M.D.; and (4) Centurion of Florida, LLC.[1] He asserts that the Defendants violated his Eighth Amendment right when they denied him timely and proper medical care for a broken knuckle on his left hand. As relief, Daniels seeks monetary damages.

Before the Court is Defendant Alexis Figueroa's Motion to Dismiss Complaint with Prejudice (Figueroa Motion; Doc. 16) and Defendant Luis Vazquez's Motion to Dismiss Complaint with Prejudice

_____

[1] On August 15, 2018, the Court dismissed Defendant B. Celian, M.D. See Order (Doc. 42).

(Vazquez Motion; Doc. 29).[2] The Court advised Daniels that granting a motion to dismiss would be an adjudication of the case that could foreclose subsequent litigation on the matter, and gave him an opportunity to respond to the motions. See Order (Doc. 5). Daniels filed responses in opposition to the motions. See Motion in Opposition to Defendant Figueroa's Motion to Dismiss (Response I; Doc. 20); Motion in Opposition to Defendant Luis Vazquez's Motion to Dismiss (Response II; Doc. 39). Accordingly, this matter is ripe for review.

## II. Motion to Dismiss Standard

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. Bellsouth Telecomm., 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citations omitted). Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "'give

---

[2] Defendant Dennis A. Vilchez's Motion to Dismiss Complaint with Prejudice (Vilchez Motion; Doc. 31) is pending, and the Court directed Daniels to respond to Vilchez's Motion no later than September 24, 2018. See Order (Doc. 40).

the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" <u>Erickson v. Pardus</u>, 551 U.S. 89, 93 (2007) (per curiam) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim that is plausible on its face." <u>Twombly</u>, 550 U.S. at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 678 (citing <u>Twombly</u>, 550 U.S. at 556).

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" <u>Twombly</u>, 550 U.S. at 555 (internal quotations omitted); <u>see also Jackson,</u> 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (internal citation and quotations omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." <u>See Iqbal</u>, 556 U.S. at 678, 680. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[.]'" <u>Id.</u> at 678 (quoting <u>Twombly</u>, 550 U.S. at

570). And, while "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed," Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998), "'this leniency does not give the court a license to serve as de facto counsel for a party or to rewrite an otherwise deficient pleading in order to sustain an action.'" Alford v. Consol. Gov't of Columbus, Ga., 438 F. App'x 837, 839 (11th Cir. 2011)[3] (quoting GJR Invs., Inc. v. Cty. of Escambia, Fla., 132 F.3d 1359, 1369 (11th Cir. 1998) (internal citation omitted), overruled in part on other grounds as recognized in Randall, 610 F.3d at 706).

### III. Plaintiff's Assertions[4]

Daniels asserts that he was involved in a physical altercation at Suwannee Correctional Institution (SCI) in Live Oak, Florida, on

---

[3] "Although an unpublished opinion is not binding . . . , it is persuasive authority." United States v. Futrell, 209 F.3d 1286, 1289 (11th Cir. 2000) (per curiam); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

[4] The Complaint is the operative pleading. In considering a motion to dismiss, the Court must accept all factual allegations in the Complaint as true, consider the allegations in the light most favorable to the plaintiff, and accept all reasonable inferences that can be drawn from such allegations. Miljkovic v. Shafritz and Dinkin, P.A., 791 F.3d 1291, 1297 (11th Cir. 2015) (quotations and citations omitted). As such, the recited facts are drawn from the Complaint and may differ from those that ultimately can be proved. Additionally, because this matter is before the Court on motions to dismiss filed by Defendants Figueroa and Vazquez, the Court's recitation of the facts will focus on Daniels' allegations as to them.

July 19, 2016. See Complaint at 4. He states that SCI medical staff ordered x-rays, which showed he had a broken knuckle on his left hand. See id. He avers that SCI medical staff gave him two Lortab 5 milligram (mg) tablets for pain and put a splint on his hand at the initial evaluation. See id. He maintains that Dr. Vasquez prescribed Lortab 5 mg for pain, however, the SCI medical staff never filled the prescription. See id. He states that he was not provided any pain medication until a nurse gave him some non-aspirin on August 2, 2016. See id.

According to Daniels, Dr. F. Ong performed surgery on his left pinky finger at the Reception and Medical Center (RMC) in Lake Butler, Florida, on August 11, 2016, and provided post-surgical instructions. See id. Daniels summarizes Dr. Ong's follow-up-care instructions: (1) removal of stitches in two weeks; (2) removal of pins after eight weeks; (3) prescribed pain medication (Lortab and Excedrin), and other medications (Keflex 500 mg, Benadryl, and Oyster Shell). See id. He asserts that the Florida Department of Corrections (FDOC) transferred him back to SCI after the surgery. See id.

Daniel states that Dr. Figueroa advised him that he would prescribe Ibuprofen. See id. He maintains that he explained to Dr. Figueroa that he was allergic to non-steroidal anti-inflammatory drugs (NSAID), and Dr. Figueroa told him to shut his mouth or he would have him locked up. See id. According to Daniels, he did not

receive any pain medication from August 11th until August 25th. <u>See</u>
<u>id.</u> Daniels avers that when he complained about the lack of pain
medication on August 25th, the SCI medical staff advised him to
take the Ibuprofen that Figueroa ordered. <u>See</u> <u>id.</u> at 5.

Daniels maintains that he declared a medical emergency on
August 29th because his hand was "swollen and discolored." <u>Id.</u> He
states that Dr. Vazquez cleaned his hand and prescribed Lortab 5 mg
for four days. <u>See</u> <u>id.</u> He asserts that he declared another medical
emergency on September 9th because he was still in a "great deal of
pain and his hand was swollen." <u>Id.</u> Daniels declares that he showed
the medical staff "blood, pus, and yellow looking fluid coming from
his hand." <u>Id.</u> According to Daniels, the medical staff changed the
dressing, and gave him several packets of non-aspirin for pain, and
advised him that "nothing was wrong with his hand." <u>Id.</u> He avers
that blood, pus and yellow fluid was still seeping from his wound
on September 13th, when the medical staff changed the dressing. <u>See</u>
<u>id.</u>

Daniels states that SCI security staff refused to permit him
to go to his doctor visit on September 19th, so he declared a
medical emergency. <u>See</u> <u>id.</u> According to Daniels, Dr. Celian
confirmed that his hand was infected, and treated him with
antibiotics, an ice pack, three packages of Tylenol (two in each
packet), and an arm sling. <u>See</u> <u>id.</u> He avers that he declared a
medical emergency on October 3rd because "flesh had grown around

the stitches." Id. He states that he was told to access sick call. See id. Daniels maintains that he continued to visit sick call and complained about "constant pain" and "the fact" that his stitches should have been removed. Id. He declares that the medical staff neither provided pain medication nor removed the stitches, but instead told him there was nothing the staff could do for him. See id. Daniels maintains that the stitches were removed in "a second surgery to dig the stitches out of [his] hand as [his] flesh had grown around and over the stitches." Id. Daniels avers that he is still in pain and is not provided pain medication. See id. at 6. He maintains that his left hand will not "close" due to the Defendants' deliberate indifference to his medical needs. Id. He states that he has lost the use of his left hand. See id.

### IV. Summary of Arguments

Defendants maintain that the Court should dismiss the Complaint with prejudice because Daniels neither exhausted his administrative remedies, nor states an Eighth Amendment claim of deliberate indifference. See Figueroa Motion at 4-6; Vazquez Motion at 4-6.[5] Additionally, Defendants argue that they are entitled to qualified immunity and Eleventh Amendment immunity. See Figueroa Motion at 6-7; Vazquez Motion at 6-8. Next, they state that Daniels failed to assert a physical injury. See Figueroa Motion at 8; Vazquez Motion at 8. Daniels opposes Defendants' Motions. See

---

[5] Notably, Defendants' arguments parallel each other.

Response I; Response II. He asserts that he exhausted his administrative remedies, states an Eighth Amendment claim of deliberate indifference as to each Defendant, and asserts an actual physical injury to his left hand that is "substantial, permanent and life-changing" since he is left-handed. Response I at 5; Response II at 5. Additionally, he maintains that the Defendants neither are entitled to qualified immunity nor Eleventh Amendment immunity. <u>See</u> Response I at 4-5; Response II at 4-5.

## V. Discussion

### A. Exhaustion of Administrative Remedies

Exhaustion of available administrative remedies is required before a 42 U.S.C. § 1983 action with respect to prison conditions may be initiated in this Court by a prisoner. <u>See</u> 42 U.S.C. § 1997e(a). Nevertheless, a prisoner such as Daniels is not required to plead exhaustion. <u>See</u> <u>Jones v. Bock</u>, 549 U.S. 199, 216 (2007). Instead, the United States Supreme Court has recognized "failure to exhaust is an affirmative defense under the PLRA[.]" <u>Id.</u> Notably, exhaustion of available administrative remedies is "a precondition to an adjudication on the merits" and is mandatory under the PLRA. <u>Bryant v. Rich</u>, 530 F.3d 1368, 1374 (11th Cir. 2008); <u>Jones</u>, 549 U.S. at 211; <u>Woodford v. Ngo</u>, 548 U.S. 81, 85 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory.") (citation omitted). Not only is there an exhaustion

requirement, "the PLRA exhaustion requirement requires proper exhaustion." <u>Woodford</u>, 548 U.S. at 93.

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so <u>properly</u> (so that the agency addresses the issues on the merits)." <u>Pozo</u>,[6] 286 F.3d, at 1024. . . .

<u>Id.</u> at 90. And, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules . . . ." <u>Id.</u> As such, the United States Supreme Court has emphasized:

> Courts may not engraft an unwritten "special circumstances" exception onto the PLRA's exhaustion requirement. The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are "available."

<u>Ross v. Blake</u>, 136 S.Ct. 1850, 1862 (2016).

The determination of whether an inmate exhausted his available administrative remedies prior to filing a cause of action in federal court is a matter of abatement and should be raised in a motion to dismiss. <u>Bryant</u>, 530 F.3d at 1374. The Eleventh Circuit has explained the two-step process that the Court must employ when examining the issue of exhaustion of administrative remedies.

---

[6] <u>Pozo v. McCaughtry</u>, 286 F.3d 1022 (7th Cir. 2002).

After a prisoner has exhausted the grievance procedures, he may file suit under § 1983. In response to a prisoner suit, defendants may bring a motion to dismiss and raise as a defense the prisoner's failure to exhaust these administrative remedies. See Turner, 541 F.3d at 1081.[7] In Turner v. Burnside we established a two-step process for resolving motions to dismiss prisoner lawsuits for failure to exhaust. 541 F.3d at 1082. First, district courts look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true. The court should dismiss if the facts as stated by the prisoner show a failure to exhaust. Id. Second, if dismissal is not warranted on the prisoner's view of the facts, the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust. Id. at 1082-83; see also id. at 1082 (explaining that defendants bear the burden of showing a failure to exhaust).

Whatley v. Warden, Ware State Prison, 802 F.3d 1205, 1209 (11th Cir. 2015); see Pavao v. Sims, 679 F. App'x 819, 823-24 (11th Cir. 2017) (per curiam).

In the Complaint, Daniels asserts that Defendants Figueroa and Vazquez denied him timely and proper medical care. Defendants maintain that the Court should dismiss the claims against them because Daniels failed to exhaust his administrative remedies, as required by the PLRA, before filing the 42 U.S.C. § 1983 lawsuit. They state that Daniels failed to plead or otherwise show that he has exhausted his administrative remedies before filing the

---

[7] Turner v. Burnside, 541 F.3d 1077 (11th Cir. 2008).

lawsuit. <u>See</u> Figueroa Motion at 4-5; Vazquez Motion at 4-5. In response to Defendants' Motions, Daniels asserts that "he has indeed exhausted administrative remedies." Response I at 3; Response II at 3. Neither the Defendants nor Daniels provide any exhibits in support of their positions.

As to the initial step in the two-part process for deciding motions to dismiss for failure to exhaust under the PLRA, the Eleventh Circuit has instructed:

> District courts first should compare the factual allegations in the motion to dismiss and those in the prisoner's response and, where there is a conflict, accept the prisoner's view of the facts as true. "The court should dismiss if the facts as stated by the prisoner show a failure to exhaust." <u>Id.</u>[8]

<u>Pavao</u>, 679 F. App'x at 823-24. Accepting Daniels' responsive assertion (that he exhausted administrative remedies) as true, a dismissal is not warranted. As to the second step in the two-part procedure, the Defendants bear the burden of proving that Daniels failed to exhaust his available administrative remedies as to Daniels' Eighth Amendment claims against them. <u>See</u> <u>Turner</u>, 541 F.3d at 1082 (citation omitted). As they have provided no evidence, Defendants' have not met their burden. As such, Defendants' Motions as to exhaustion are due to be denied.

---

[8] <u>Whatley</u>, 802 F.3d at 1209.

## B. Eighth Amendment Deliberate Indifference

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that (1) the defendant deprived him of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred under color of state law. Salvato v. Miley, 790 F.3d 1286, 1295 (11th Cir. 2015); Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011) (per curiam) (citation omitted); Richardson v. Johnson, 598 F.3d 734, 737 (11th Cir. 2010) (per curiam) (citations omitted). Moreover, the Eleventh Circuit "'requires proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation' in § 1983 cases." Rodriquez v. Sec'y, Dep't of Corr., 508 F.3d 611, 625 (11th Cir. 2007) (quoting Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986)). In the absence of a federal constitutional deprivation or violation of a federal right, a plaintiff cannot sustain a cause of action against the defendants.

The Eleventh Circuit has explained the requirements for an Eighth Amendment violation.

> "The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones . . . ." Farmer, 511 U.S. at 832, 114 S.Ct. at 1976 (internal quotation and citation omitted).[9] Thus, in its prohibition of "cruel and unusual punishments," the Eighth Amendment requires that prison officials provide humane conditions of confinement. Id. However, as

---

[9] Farmer v. Brennan, 511 U.S. 825 (1994).

> noted above, only those conditions which
> objectively amount to an "extreme deprivation"
> violating contemporary standards of decency
> are subject to Eighth Amendment scrutiny.
> Hudson, 503 U.S. at 8-9, 112 S.Ct. at 1000.[10]
> Furthermore, it is only a prison official's
> subjective deliberate indifference to the
> substantial risk of serious harm caused by
> such conditions that gives rise to an Eighth
> Amendment violation. Farmer, 511 U.S. at 828,
> 114 S.Ct. at 1974 (quotation and citation
> omitted); Wilson, 501 U.S. at 303, 111 S.Ct.
> at 2327.[11]

Thomas v. Bryant, 614 F.3d 1288, 1306-07 (11th Cir. 2010). "To show

that a prison official acted with deliberate indifference to

serious medical needs, a plaintiff must satisfy both an objective

and a subjective inquiry." Brown v. Johnson, 387 F.3d 1344, 1351

(11th Cir. 2004) (quoting Farrow v. West, 320 F.3d 1235, 1243 (11th

Cir. 2003)). First, the plaintiff must satisfy the objective

component by showing that he had a serious medical need. Goebert v.

Lee Cty., 510 F.3d 1312, 1326 (11th Cir. 2007).

> "A serious medical need is considered
> 'one that has been diagnosed by a physician as
> mandating treatment or one that is so obvious
> that even a lay person would easily recognize
> the necessity for a doctor's attention.'" Id.
> (citing Hill v. Dekalb Reg'l Youth Det. Ctr.,
> 40 F.3d 1176, 1187 (11th Cir. 1994)). In
> either case, "the medical need must be one
> that, if left unattended, pos[es] a
> substantial risk of serious harm." Id.
> (citation and internal quotations marks
> omitted).

---

[10] Hudson v. McMillian, 503 U.S. 1 (1992).

[11] Wilson v. Seiter, 501 U.S. 294 (1991).

Brown, 387 F.3d at 1351.

Next, the plaintiff must satisfy the subjective component, which requires the plaintiff to "allege that the prison official, at a minimum, acted with a state of mind that constituted deliberate indifference." Richardson, 598 F.3d at 737 (describing the three components of deliberate indifference as "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence.") (citing Farrow, 320 F.3d at 1245); Lane v. Philbin, 835 F.3d 1302, 1308 (11th Cir. 2016) (setting forth the three components) (citing Farrow, 320 F.3d at 1245).

> In Estelle[12], the Supreme Court established that "deliberate indifference" entails more than mere negligence. Estelle, 429 U.S. at 106, 97 S.Ct. 285; Farmer, 511 U.S. at 835, 114 S.Ct. 1970. The Supreme Court clarified the "deliberate indifference" standard in Farmer by holding that a prison official cannot be found deliberately indifferent under the Eighth Amendment "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837, 114 S.Ct. 1970 (emphasis added). In interpreting Farmer and Estelle, this Court explained in McElligott[13] that "deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by

---

12 Estelle v. Gamble, 429 U.S. 97 (1976).

13 McElligott v. Foley, 182 F.3d 1248 (11th Cir. 1999).

> conduct that is more than mere negligence."
> McElligott, 182 F.3d at 1255; Taylor,[14] 221
> F.3d at 1258 (stating that defendant must have
> subjective awareness of an "objectively
> serious need" and that his response must
> constitute "an objectively insufficient
> response to that need").

Farrow, 320 F.3d at 1245-46. Notably, the Supreme Court has stated that a plaintiff may demonstrate the deliberate indifference of prison officials by showing that they intentionally interfered with prescribed treatment or intentionally denied access to medical care. See Estelle, 429 U.S. at 104-05.

Defendants Figueroa and Vazquez seek dismissal of Daniels' Eighth Amendment claims against them, arguing that Daniels fails to provide sufficient facts that would entitle him to relief. Viewing the facts in the light most favorable to Daniels, as the Court must, the Court is not so convinced. Daniels has alleged facts sufficient to state a plausible claim under the Eighth Amendment. In reaching this conclusion, the Court observes that Daniels asserts that Figueroa and Vazquez denied him timely and proper medical care resulting in an infection, a second surgery, and lost mobility in his dominant hand. See Qamar v. C.I.A., 489 F. App'x 393, 396 (11th Cir. 2012) (per curiam) ("Deliberate indifference to the serious medical needs of prisoners violates the Eighth Amendment prohibition against cruel and unusual punishment, and prison officials act with deliberate indifference if they knowingly

---

[14] Taylor v. Adams, 221 F.3d 1254 (11th Cir. 2000).

interfere with treatment prescribed by a physician.") (citing
<u>Washington v. Dugger</u>, 860 F.2d 1018, 1021 (11th Cir. 1988)). The
Court declines to find that these allegations if proven would fail
to state a plausible claim for a violation of the Eighth Amendment.
As such, Defendants' Motions are due to be denied as to Daniels'
Eighth Amendment claims against them.

### C. Eleventh Amendment

To the extent Defendants assert that they are entitled to
Eleventh Amendment immunity, this Court agrees.

> The Eleventh Amendment provides that
> "[t]he Judicial power of the United States
> shall not be construed to extend to any suit
> in law or equity, commenced or prosecuted
> against one of the United States by Citizens
> of another State, or by Citizens or Subjects
> of any Foreign State." U.S. Const. amend. XI.
> It is well established that, in the absence of
> consent, "a suit in which the State or one of
> its agencies or departments is named as the
> defendant is proscribed by the Eleventh
> Amendment." <u>Papasan v. Allain</u>, 478 U.S. 265,
> 276, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)
> (quotation omitted). The Eleventh Amendment
> also prohibits suits against state officials
> where the state is the real party in interest,
> such that a plaintiff could not sue to have a
> state officer pay funds directly from the
> state treasury for the wrongful acts of the
> state. <u>Summit Med. Assocs., P.C. v. Pryor</u>, 180
> F.3d 1326, 1336 (11th Cir. 1999). . . .

<u>Hayes v. Sec'y, Fla. Dep't of Children & Families</u>, 563 F. App'x
701, 703 (11th Cir. 2014) (per curiam).

In <u>Zatler v. Wainwright</u>, 802 F.2d 397, 400 (11th Cir. 1986)
(per curium), the Eleventh Circuit noted:

It is clear that Congress did not intend to abrogate a state's eleventh amendment immunity in section 1983 damage suits. <u>Quern v. Jordan</u>, 440 U.S. 332, 340-45, 99 S.Ct. 1139, 1144-45, 59 L.Ed.2d 358 (1979). Furthermore, after reviewing specific provisions of the Florida statutes, we recently concluded that Florida's limited waiver of sovereign immunity was not intended to encompass section 1983 suits for damages. <u>See</u> <u>Gamble</u>,[15] 779 F.2d at 1513-20.

Accordingly, in <u>Zatler</u>, the court found that the FDOC Secretary was immune from suit in his official capacity. <u>Id.</u> Insofar as Daniels may be seeking monetary damages from Defendants in their official capacities, the Eleventh Amendment bars suit. Therefore, Defendants' Motions are due to be granted as to Daniels' claims for monetary damages from them in their official capacities.

### D. Qualified Immunity

Defendants Figueroa and Vazquez assert that they are entitled to qualified immunity. <u>See</u> Figueroa Motion at 6-7; Vazquez Motion at 6-7. As to qualified immunity, the Eleventh Circuit stated:

To invoke qualified immunity, a public official must first demonstrate that he was acting within the scope of his or her discretionary authority. <u>Maddox v. Stephens</u>, 727 F.3d 1109, 1120 (11th Cir. 2013). As we have explained the term "discretionary authority," it "include[s] all actions of a governmental official that (1) were undertaken pursuant to the performance of his duties, and (2) were within the scope of his authority." <u>Jordan v. Doe</u>, 38 F.3d 1559, 1566 (11th Cir. 1994) (internal quotation marks omitted).

---

[15] <u>Gamble v. Fla. Dep't of Health & Rehab. Serv.</u>, 779 F.2d 1509 (11th Cir. 1986).

Here, it is clear that Defendant Officers
satisfied this requirement, as they engaged in
all of the challenged actions while on duty as
police officers conducting investigative and
seizure functions.

Because Defendant Officers have
established that they were acting within the
scope of their discretionary authority, the
burden shifts to [the plaintiff] to
demonstrate that qualified immunity is
inappropriate. See id. To do that, [the
plaintiff] must show that, when viewed in the
light most favorable to him, the facts
demonstrate that Defendant Officers violated
[Plaintiff's] constitutional right and that
that right was "clearly established ... in
light of the specific context of the case, not
as a broad general proposition[,]" at the time
of Defendant officers' actions. Saucier v.
Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150
L.Ed.2d 272 (2001), overruled in part on other
grounds by Pearson, 555 U.S. 223, 129 S.Ct.
808. We may decide these issues in either
order, but, to survive a qualified-immunity
defense, [the plaintiff] must satisfy both
showings. Maddox, 727 F.3d at 1120-21
(citation omitted).

Jones v. Fransen, 857 F.3d 843, 850-51 (11th Cir. 2017).

The Eleventh Circuit explained the proper analysis when a

district court considers a motion to dismiss based on qualified

immunity.

When presented with the officers' motions to
dismiss, both our precedent and precedent from
the Supreme Court instruct the district court
to analyze whether, taking [Plaintiff]'s
allegations as true, the . . . complaint
asserted a violation of a clearly established
constitutional right. See Chesser v. Sparks,
248 F.3d 1117, 1121 (11th Cir. 2001) ("[T]he
[qualified immunity] defense may be raised and
considered on a motion to dismiss; the motion
will be granted if the 'complaint fails to

allege the violation of a clearly established constitutional right.'") (quoting <u>Williams</u>, 102 F.3d at 1182)[16]; <u>Santamorena v. Ga. Military College</u>, 147 F.3d 1337, 1342 (11th Cir. 1998) (affirming grant of motion to dismiss on qualified immunity grounds because the "complaint fail[ed] to allege the violation of a clearly established constitutional right"). <u>See</u> <u>also</u> <u>Siegert v. Gilley</u>, 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991) ("A necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is 'clearly established' at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all. Decision of this purely legal question permits courts expeditiously to weed out suits which fail the test without requiring a defendant who rightly claims qualified immunity to engage in expensive and time consuming preparation to defend the suit on its merits."). . . .

<u>Joseph v. Gee</u>, 708 F. App'x 642, 643-44 (11th Cir. 2018) (per curiam).

Defendants Figueroa and Vazquez assert that they are entitled to qualified immunity because Daniels' assertions "are insufficient to plead a claim of deliberate indifference." Figueroa Motion at 7; Vazquez Motion at 7. However, upon review of the Complaint, the Court finds this assertion unavailing. The Court is of the view that Daniels has stated plausible Eighth Amendment deliberate claims against Defendants Figueroa and Vazquez, and therefore, the Defendants are not entitled to qualified immunity at this stage of

---

[16] <u>Williams v. Ala. State Univ.</u>, 102 F.3d 1179, 1182 (11th Cir. 1997).

the litigation. Accordingly, Defendants' Motions based on qualified immunity are due to be denied.

## E. Physical Injury Requirement
## 42 U.S.C. § 1997e(e)

Next, the Court turns to Daniels' claims against Defendants in their individual capacities. In <u>Brooks v. Warden</u>, 800 F.3d 1295 (11th Cir. 2015), the Eleventh Circuit Court of Appeals addressed the availability of compensatory and punitive damages as well as nominal damages in suits brought by prisoners under § 1983. The Eleventh Circuit has stated:

> [Plaintiff]'s claim, however, is further governed by the Prison Litigation Reform Act of 1995 [(PLRA)], Pub.L. No. 104-134, §§ 802-10, 110 Stat. 1321, 1366-77 (1996). The PLRA places substantial restrictions on the judicial relief that prisoners can seek, with the goal of "reduc[ing] the number of frivolous cases filed by imprisoned plaintiffs, who have little to lose and excessive amounts of free time with which to pursue their complaints." <u>Al-Amin v. Smith</u>, 637 F.3d 1192, 1195 (11th Cir. 2011) (quoting <u>Napier v. Preslicka</u>, 314 F.3d 528, 531 (11th Cir. 2002)). The section of the Act at issue here, 42 U.S.C. § 1997e(e), reads this way:

>> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act....

> This Court has held that § 1997e(e) applies to all federal civil actions, including constitutional claims brought under § 1983.

> See <u>Harris v. Garner</u> (<u>Harris II</u>), 216 F.3d
> 970, 984-85 (11th Cir. 2000) (en banc)....
>
> In this case, [Plaintiff] did not allege
> any physical injury . . . . Nevertheless, he
> sought "compensatory . . . punitive, and
> nominal damages" from [Defendant]. **Under the
> statute and our caselaw, an incarcerated
> plaintiff cannot recover either compensatory
> or punitive damages for constitutional
> violations unless he can demonstrate a (more
> than de minimis) physical injury.** See <u>Al-Amin</u>,
> 637 F.3d at 1198 (punitive); <u>Harris v. Garner</u>
> (<u>Harris I</u>), 190 F.3d 1279, 1286 (11th Cir.
> 1999) (compensatory), <u>reh'g en banc granted
> and opinion vacated</u>, 197 F.3d 1059 (11th Cir.
> 1999), <u>opinion reinstated in relevant part</u>,
> 216 F.3d 970. However, we have never had the
> opportunity in a published opinion to settle
> the availability of nominal damages under the
> PLRA. We do today, and we hold that nothing in
> § 1997e(e) prevents a prisoner from recovering
> nominal damages for a constitutional violation
> without a showing of physical injury.

<u>Brooks</u>, 800 F.3d at 1307-08 (emphasis added).

To satisfy § 1997e(e), a prisoner must assert physical injury
that is more than <u>de</u> <u>minimis</u>, but the injury does not need to be
significant. <u>See</u> <u>Thompson v. Sec'y, Fla. Dep't of Corr.</u>, 551 F.
App'x 555, 557 (11th Cir. 2014) (citation omitted); <u>Dixon v. Toole</u>,
225 F. App'x 797, 799 (11th Cir. 2007). Despite § 1997e(e)'s
limitation, successful constitutional claimants who lack a physical
injury may still recover nominal damages. <u>See</u> <u>Hughes v. Lott</u>, 350
F.3d 1157, 1162 (11th Cir. 2003) ("Nominal damages are appropriate
if a plaintiff establishes a violation of a fundamental
constitutional right, even if he cannot prove actual injury
sufficient to entitle him to compensatory damages."). Further, the

Eleventh Circuit has instructed courts to dismiss an inmate's compensatory and punitive damages claims under § 1997e(e) without prejudice to allow an inmate to refile when and if the inmate is released. See Harris v. Garner, 216 F.3d 970, 980 (11th Cir. 2000).

Taking Daniels' allegations as true, he asserts a physical injury that is greater than de minimis. He complains about a left-hand injury that is permanent and life-changing due to Defendants' alleged failure to timely and properly treat the wound and resulting infection. According to Daniels, he underwent a second surgery at RMC "to dig the stitches out" since the flesh had grown over the stitches because of the delay in removing the stitches. Complaint at 5. Given Daniels' assertions, his pain and discomfort that ultimately resulted in multiple sick call visits, an additional surgical procedure, and ongoing limitations of the range of motion of his hand cross § 1997e(e)'s de minimis threshold. See Thompson, 551 F. App'x at 557 n.3 (describing an approach of asking whether the injury would require a free world person to visit a doctor or emergency room) (citing Luong v. Hatt, 979 F. Supp. 481, 486 (N.D. Tex. 1997)). Thus, Defendants' Motions are due to be denied to the extent that they assert Daniels' request for monetary damages is precluded under § 1997e(e).

In consideration of the foregoing, it is now

**ORDERED**:

1.    Defendant Alexis Figueroa's Motion to Dismiss Complaint with Prejudice (Doc. 16) and Defendant Luis Vazquez's Motion to Dismiss Complaint with Prejudice (Doc. 29) are **PARTIALLY GRANTED** as to Daniels' claims for monetary damages from them in their official capacities. Otherwise, the Motions are **DENIED**.

2.    Defendants Figueroa and Vazquez, **no later than October 3, 2018**, must answer or otherwise respond to the Complaint.

**DONE AND ORDERED** at Jacksonville, Florida, this 27th day of August, 2018.

**MARCIA MORALES HOWARD**
United States District Judge

sc 8/23
c:
Theron Daniels
Counsel of Record