UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


THERON DANIELS,

          Plaintiff,

v.                              Case No. 3:17-cv-1239-J-34JRK

DENNIS A. VILCHEZ, M.D.,
et al.,

          Defendants.

────────────────────────────

**<u>ORDER</u>**

**I. Status**

Plaintiff Theron Daniels, an inmate of the Florida penal system, initiated this action on November 3, 2017, by filing a pro se Civil Rights Complaint (Complaint; Doc. 1). In the Complaint, Daniels names the following Defendants: (1) Dennis A. Vilchez, M.D.; (2) Alexis Figueroa, M.D.; (3) B. Celian, M.D.;[1] (4) Luis Vazquez, M.D.; and (5) Centurion of Florida, LLC. He asserts that the Defendants violated his Eighth Amendment right when they were deliberately indifferent to his serious medical needs. As relief, he seeks monetary damages.

─────────────────────

[1] The Court dismissed Daniels' claims against B. Celian on August 15, 2019. <u>See</u> Order (Doc. 42).

This matter is before the Court on Defendants Centurion's Amended Motion to Dismiss (Centurion Motion; Doc. 53), Vilchez's Amended Motion to Dismiss (Vilchez Motion; Doc. 54), Vazquez's Amended Motion to Dismiss (Vazquez Motion; Doc. 55), and Figueroa's Amended Motion to Dismiss (Figueroa Motion; Doc. 56). The Court advised Daniels that granting a motion to dismiss would be an adjudication of the case that could foreclose subsequent litigation on the matter, and gave him an opportunity to respond. <u>See</u> Order (Doc. 5). Plaintiff filed a response in opposition to the Motions, <u>see</u> Response (Doc. 61), and Defendants' Motions are ripe for review.

## II. Plaintiff's Allegations[2]

As to the underlying facts of his claims, Daniels asserts that he was involved in a physical altercation at Suwannee Correctional Institution (SCI) in Live Oak, Florida, on July 19, 2016. <u>See</u> Complaint at 4. According to Daniels, the x-rays showed a broken knuckle on his left hand. <u>See</u> <u>id.</u> He states that SCI medical staff gave him two Lortab pain pills at the initial evaluation, and placed a splint on his hand. <u>See</u> <u>id.</u> He maintains that Defendant

---

[2] In considering a motion to dismiss, the Court must accept all factual allegations in the Complaint as true, consider the allegations in the light most favorable to the plaintiff, and accept all reasonable inferences that can be drawn from such allegations. <u>Miljkovic v. Shafritz and Dinkin, P.A.</u>, 791 F.3d 1291, 1297 (11th Cir. 2015) (quotations and citations omitted). As such, the recited facts are drawn from the Complaint and may differ from those that ultimately can be proved.

Vazquez prescribed Lortab, however, the SCI medical staff never filled the prescription. See id. He states that he was not provided any pain medication until a nurse gave him some non-aspirin on August 2, 2016. See id.

According to Daniels, Dr. Ong performed surgery on his left pinky finger at the Reception and Medical Center (RMC) in Lake Butler, Florida, on August 11, 2016, and provided post-surgical instructions. See id. Daniels summarizes Dr. Ong's follow-up-care instruction as follows: (1) removal of stitches in two weeks; (2) removal of pins after eight weeks; and (3) provision of prescribed pain medication (Lortab and Excedrin), and other medications (Keflex 500 mg, Benadryl, and Oyster Shell calcium). See id. He asserts that the Florida Department of Corrections (FDOC) transferred him back to SCI after the surgery. See id.

Daniels states that, upon his return to SCI, Defendant Figueroa advised him that he would prescribe Ibuprofen. See id. He maintains that he explained to Figueroa that he was allergic to non-steroidal anti-inflammatory drugs (NSAID), and Figueroa told him to shut his mouth or he would have him locked up. See id. According to Daniels, he did not receive any pain medication from August 11th until August 25th. See id. Daniels avers that when he complained about the lack of pain medication on August 25th, the SCI medical staff advised him to take the Ibuprofen that Figueroa ordered. See id. at 5.

3

Daniels avers that he declared a medical emergency on August 29th because his hand was "swollen and discolored." Id. He states that Vazquez cleaned his hand and prescribed Lortab for four days. See id. He asserts that he declared another medical emergency on September 9th because he was still in a "great deal of pain and his hand was swollen." Id. Daniels declares that he showed the medical staff "blood, pus, and yellow looking fluid coming from his hand." Id. According to Daniels, the medical staff changed the dressing, and gave him several packets of non-aspirin for pain, and advised him that "nothing was wrong with his hand." Id. He avers that blood, pus and yellow fluid was still seeping from his wound on September 13th, when the medical staff changed the dressing. See id.

Daniels states that SCI security staff refused to permit him to go to his September 19th doctor visit, so he declared a medical emergency. See id. According to Daniels, Dr. Celian confirmed that his hand was infected, and treated him with antibiotics, an ice pack, three packages of Tylenol, and an arm sling. See id. He avers that he declared a medical emergency on October 3rd because "flesh had grown around the stitches." Id. He avers that he was told to request a sick-call visit. See id. Daniels maintains that he continued to visit sick call, at which he complained about the "constant pain" caused by the stitches. Id. He declares that the medical staff neither provided pain medication nor removed the

stitches, but instead told him there was nothing they could do for him. See id.

According to Daniels, he showed Defendant Vilchez his hand and informed Vilchez about Dr. Ong's post-surgical instructions. See id. at 5. Daniels proclaims that Vilchez told him that there was nothing he could do because the surgeon needed to remove the stitches. See id. According to Daniels, Centurion was either aware, or should have been aware, of its employees' actions, and failed to take any action to prevent or remedy Daniels' suffering. See id. at 6. He maintains that Centurion established a custom where the employees performed only routine health care and withheld costly treatments. See id. Daniels avers that the stitches were removed in "a second surgery to dig the stitches out of [his] hand as [his] flesh had grown around and over the stitches." Id. at 5. He states that he complained about the pain to Vilchez, who said, "you silly inmate, your hand is infected[;] that's why you have pain in your hand." Id. at 6. He avers that his left hand will not "close," and he has lost the use of his left hand due to Defendants' deliberate indifference to his medical needs. Id.

### III. Motion to Dismiss Standard

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); see also Lotierzo v. Woman's

5

_World Med. Ctr., Inc._, 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. _See_ _Randall v. Scott_, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff must still meet some minimal pleading requirements. _Jackson v. Bellsouth Telecomm._, 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citations omitted). Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" _Erickson v. Pardus_, 551 U.S. 89, 93 (2007) (per curiam) (quoting _Bell Atlantic Corp. v. Twombly_, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim that is plausible on its face." _Twombly_, 550 U.S. at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." _Iqbal_, 556 U.S. at 678 (citing _Twombly_, 550 U.S. at 556).

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" _Twombly_, 550 U.S. at 555 (internal quotations omitted); _see also_ _Jackson_, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (internal citation and quotations omitted). Indeed, "the tenet that

a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." See Iqbal, 556 U.S. at 678, 680. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[.]'" Id. at 678 (quoting Twombly, 550 U.S. at 570). And, while "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed," Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998), "'this leniency does not give the court a license to serve as de facto counsel for a party or to rewrite an otherwise deficient pleading in order to sustain an action.'" Alford v. Consol. Gov't of Columbus, Ga., 438 F. App'x 837, 839 (11th Cir. 2011)[3] (quoting GJR Invs., Inc. v. Cty. of Escambia, Fla., 132 F.3d 1359, 1369 (11th Cir. 1998) (internal citation omitted), overruled in part on other grounds as recognized in Randall, 610 F.3d at 706).

---

[3] "Although an unpublished opinion is not binding . . . , it is persuasive authority." United States v. Futrell, 209 F.3d 1286, 1289 (11th Cir. 2000) (per curiam); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

## IV. Summary of the Arguments

In the Motions,[4] Defendants request dismissal of Daniels' claims against them because Daniels failed to exhaust his administrative remedies, as required by the Prison Litigation Reform Act (PLRA), before filing the instant 42 U.S.C. § 1983 lawsuit. See Centurion Motion at 3-5; Vilchez, Vazquez, and Figueroa Motions at 4-6. Next, they argue that Daniels failed to state plausible Eighth Amendment claims against them, see Centurion Motion at 5-6; Vilchez Motion at 6-8; Vazquez and Figueroa Motions at 6-7, and that they are entitled to qualified immunity, see Vilchez Motion at 8-9; Vazquez and Figueroa Motions at 7-8. They also assert that the Eleventh Amendment bars Daniels' claims for monetary damages against them in their official capacities. See Vilchez Motion at 9; Vazquez and Figueroa Motions at 8-9. Finally, they maintain that Daniels is not entitled to compensatory and punitive damages under 42 U.S.C. § 1997e(e) because he has not alleged any physical injury resulting from Defendants' acts and/or omissions. See Vilchez, Vazquez and Figueroa Motions at 9-10. In response to the Motions, Daniels asserts that he exhausted his administrative remedies, states a plausible claim of Eighth Amendment deliberate indifference, and asserts an actual physical injury to his left hand that is "permanent and life-changing" since he is left-handed. Response at 6. He maintains that the Defendants

_____

[4] Defendants' Motions are strikingly similar.

are not entitled to qualified immunity, and "concedes" that the Eleventh Amendment bars his official-capacity claims against Defendants Vilchez, Figueroa, and Vazquez. Id. at 6 (citing Doc. 44).[5]

## V. Exhaustion of Administrative Remedies

### 1. Exhaustion under the PLRA

Exhaustion of available administrative remedies is required before a § 1983 action with respect to prison conditions may be initiated by a prisoner. See 42 U.S.C. § 1997e(a). Nevertheless, a prisoner such as Daniels is not required to plead exhaustion. See Jones v. Bock, 549 U.S. 199, 216 (2007). Instead, the United States Supreme Court has recognized "failure to exhaust is an affirmative defense under the PLRA[.]" Id. Notably, exhaustion of available administrative remedies is "a precondition to an adjudication on the merits" and is mandatory under the PLRA. Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008); Jones, 549 U.S. at 211; Woodford v. Ngo, 548 U.S. 81, 85 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory.") (citation omitted). Not only is there an exhaustion requirement, "the PLRA

_____

[5] The Court partially granted Defendants Figueroa and Vazquez's previously-filed motions to dismiss (Docs. 16, 29), in which they raised similar arguments. See Order (Doc. 44). The Court granted Defendants Centurion, Vilchez, Vazquez, and Figueroa leave to refile motions to dismiss to address the exhaustion issue. See Order (Doc. 50).

exhaustion requirement requires proper exhaustion." <u>Woodford</u>, 548

U.S. at 93.

> Because exhaustion requirements are
> designed to deal with parties who do not want
> to exhaust, administrative law creates an
> incentive for these parties to do what they
> would otherwise prefer not to do, namely, to
> give the agency a fair and full opportunity to
> adjudicate their claims. Administrative law
> does this by requiring proper exhaustion of
> administrative remedies, which "means using
> all steps that the agency holds out, and doing
> so <u>properly</u> (so that the agency addresses the
> issues on the merits)." <u>Pozo</u>,[6] 286 F.3d, at
> 1024. . . .

<u>Woodford</u>, 548 U.S. at 90. And, "[p]roper exhaustion demands

compliance with an agency's deadlines and other critical procedural

rules . . . ." <u>Id.</u> As such, the United States Supreme Court has

emphasized:

> Courts may not engraft an unwritten
> "special circumstances" exception onto the
> PLRA's exhaustion requirement. The only limit
> to § 1997e(a)'s mandate is the one baked into
> its text: An inmate need exhaust only such
> administrative remedies as are "available."

<u>Ross v. Blake</u>, 136 S.Ct. 1850, 1862 (2016).

The determination of whether an inmate exhausted his available

administrative remedies prior to filing a cause of action in

federal court is a matter of abatement and should be raised in a

motion to dismiss, or be treated as such if raised in a summary

judgment motion. <u>Bryant</u>, 530 F.3d at 1374-75 (citation omitted).

---

[6] <u>Pozo v. McCaughtry</u>, 286 F.3d 1022 (7th Cir. 2002).

The Eleventh Circuit has explained the two-step process that the Court must employ when examining the issue of exhaustion of administrative remedies.

> After a prisoner has exhausted the grievance procedures, he may file suit under § 1983. In response to a prisoner suit, defendants may bring a motion to dismiss and raise as a defense the prisoner's failure to exhaust these administrative remedies. <u>See Turner</u>, 541 F.3d at 1081.[7] In <u>Turner v. Burnside</u> we established a two-step process for resolving motions to dismiss prisoner lawsuits for failure to exhaust. 541 F.3d at 1082. First, district courts look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true. The court should dismiss if the facts as stated by the prisoner show a failure to exhaust. <u>Id.</u> Second, if dismissal is not warranted on the prisoner's view of the facts, the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust. <u>Id.</u> at 1082–83; <u>see also id.</u> at 1082 (explaining that defendants bear the burden of showing a failure to exhaust).

<u>Whatley v. Warden, Ware State Prison</u>, 802 F.3d 1205, 1209 (11th Cir. 2015); <u>see</u> <u>Pavao v. Sims</u>, 679 F. App'x 819, 823–24 (11th Cir. 2017) (per curiam).

## 2. Exhaustion under Florida's Prison Grievance Procedure

The FDOC provides an internal grievance procedure for its inmates. <u>See</u> FLA. ADMIN. CODE r. 33-103.001 through 33-103.018. Generally, to properly exhaust administrative remedies, a prisoner

---

[7] <u>Turner v. Burnside</u>, 541 F.3d 1077, 1084 (11th Cir. 2008).

must complete a three-step sequential process. First, an inmate must submit an informal grievance to a designated staff member at the institutional level. <u>See</u> FLA. ADMIN. CODE r. 33-103.005. If the issue is not resolved, the inmate must submit a formal grievance at the institutional level. <u>See</u> FLA. ADMIN. CODE r. 33-103.006. If the matter is not resolved at the institutional level, the inmate must file an appeal to the Office of the FDOC Secretary. <u>See</u> FLA. ADMIN. CODE r. 33-103.007.

However, under specified circumstances, an inmate can bypass the informal-grievance stage and start with a formal grievance at the institutional level. <u>See</u> FLA. ADMIN. CODE r. 33-103.005(1); 33-103.006(3). Or, an inmate can completely bypass the institutional level and proceed directly to the Office of the FDOC Secretary by filing a "direct grievance." <u>See</u> FLA. ADMIN. CODE r. 33-103.007(3). Emergency grievances and grievances of reprisal[8] are types of "direct grievances" that may be filed with the Office of the Secretary. <u>See</u> FLA. ADMIN. CODE r. 33-103.007(3)(a). In a direct grievance to the Secretary, the inmate "must clearly state the reason for not initially bringing the complaint to the attention of institutional staff and by-passing the informal and formal

_____

[8] Rule 33-103.002(9) defines a grievance of reprisal as "[a] grievance submitted by an inmate alleging that staff have taken or are threatening to take retaliatory action against the inmate for good faith participation in the inmate grievance procedure." FLA. ADMIN. CODE r. 33-103.002(9).

grievance steps of the institution or facility . . . ." FLA. ADMIN. CODE r. 33-103.007(3)(a)2. If the Secretary determines that the grievance does not qualify as one of the types of direct grievances described in the rule, the grievance must be returned to the inmate, stating the reasons for its return and advising the inmate to resubmit the grievance at the appropriate level. <u>See</u> FLA. ADMIN. CODE r. 33-103.007(3)(d). If the grievance is returned to the institution or facility for further investigation or a response, the inmate may, after receiving the response, re-file with the Secretary if he is not satisfied with the response. <u>See</u> FLA. ADMIN. CODE r. 33-103.007(8).

According to Rule 33-103.014, an informal grievance, formal grievance, direct grievance, or grievance appeal "may be returned to the inmate without further processing if, following a review of the grievance, one or more ... conditions are found to exist." FLA. ADMIN. CODE r. 33-103.014(1). The rule provides an enumerated list as "the only reasons for returning a grievance without a response on the merits." <u>See</u> FLA. ADMIN. CODE r. 33-103.014(1)(a)-(y). Some of the reasons for returning a grievance are as follows: the grievance "addresses more than one issue or complaint" or "is so broad, general or vague in nature that it cannot be clearly investigated, evaluated, and responded to" or "is not written legibly and cannot be clearly understood" or is a supplement to a previously-submitted grievance that has been accepted for review;

and the inmate "did not provide a valid reason for by-passing the previous levels of review as required or the reason provided is not acceptable," or "used more than two (2) additional narrative pages." <u>See</u> FLA. ADMIN. CODE r. 33-103.014(1)(a), (b), (c), (f), (q), (t).

### 3. Daniels' Exhaustion Efforts

Defendants maintain that Daniels failed to exhaust his administrative remedies as to the claims against them before filing this § 1983 lawsuit. <u>See</u> Centurion Motion at 3-5; Vilchez, Vazquez, Figueroa Motions at 4-6. In support of their position, they submitted Composite Exhibit A. <u>See</u> Docs. 53-1 at 1-15; 54-1 at 1-15; 55-1 at 1-15; 56-1 at 1-15. They assert that Daniels submitted five informal grievances relating to his hand injury, <u>see</u> <u>id.</u> at 7, 9, 10, 12, 13, and did not appeal the FDOC's denials, <u>see</u> Centurion Motion at 4-5; Vilchez, Vazquez, and Figueroa Motions at 5. They maintain that the Court should dismiss Daniels' claims against them "[f]or this reason alone." <u>Id.</u> at 5. Next, they argue that the grievances do not address "the two subjects of the lawsuit" (the failure to remove stitches and the failure to dispense pain medication), but instead concern hand surgery and therapy. Centurion, Vazquez, Figueroa Motions at 5; Vilchez Motion at 6. They also maintain that Daniels failed to name Vilchez, Vazquez, and Figueroa in the grievances when he knew their identities. <u>See</u> Vilchez Motion at 6; Vazquez, Figueroa Motions at 5-6. In response,

Daniels asserts that he exhausted his administrative remedies as to his claims against the Defendants. In support of his position, he submitted "all related grievances." Response at 3, Doc. 61-1 at 1-24. In comparing Daniels' exhibits to Defendants' Composite Exhibit A, the Court finds that Defendants failed to provide the Court with all relevant grievances and responses related to the claims against them. Apparently, Defendants limited their records search to informal grievances and failed to account for Daniels' submission of formal medical grievances. In doing so, they provided an inaccurate history of Daniels' exhaustion efforts.[9] Nevertheless, it appears that Daniels furnished the Court with the relevant exhibits.

As to the initial step in the two-part process for deciding motions to dismiss for failure to exhaust under the PLRA, the Eleventh Circuit has instructed:

> District courts first should compare the factual allegations in the motion to dismiss and those in the prisoner's response and, where there is a conflict, accept the prisoner's view of the facts as true. "The court should dismiss if the facts as stated by the prisoner show a failure to exhaust." Id.[10]

---

[9] In future cases where exhaustion is challenged, counsel must provide the Court with all relevant grievances, responses, and appeals, and include a list of them with corresponding grievance tracking numbers to facilitate the Court's review.

[10] Whatley, 802 F.3d at 1209.

_Pavao_, 679 F. App'x at 823-24. Daniels asserts that he exhausted his administrative remedies as to his claims against the Defendants. Here, accepting Daniels' view of the facts as true, a dismissal of the claims against Defendants Centurion, Vilchez, Vazquez, and Figueroa for lack of exhaustion is not warranted. Thus, the Court proceeds to the second step in the two-part process where the Court considers the Defendants' arguments regarding exhaustion and makes findings of fact.

First, Defendants argue that Daniels only submitted five informal grievances relating to his hand surgery and therapy, and did not appeal the FDOC's denials. _See_ Centurion Motion at 4-5; Vilchez, Vazquez, and Figueroa Motions at 5. In response, Daniels submitted his grievances, the responses, and any appeals, _see_ Doc. 61-1, which are relevant to the Court's analysis. In particular, Daniels submitted a Request for Administrative Remedy or Appeal (Log #16-6-36774, dated August 29, 2016) to the FDOC Secretary. _See_ Doc. 61-1 at 1. In this "emergency grievance" sent directly to the FDOC Secretary,[11] Daniels stated that the sutures from his August 11, 2016 hand surgery were irritating and painful, and asked that a Centurion physician or Vazquez remove them in accordance with Ong's instructions. _See_ _id._ On or about September 9, 2016, C.

---

[11] Emergency grievances are a type of "direct grievances" that may be filed with the FDOC Secretary. _See_ FLA. ADMIN. CODE r. 33-103.007(3)(a).

Greene returned the grievance without action, stating that the grievance was "not accepted" as an emergency grievance. Id. at 2.

On August 29, 2016, Daniels submitted a "medical grievance"[12] (Log #1608-230-323) to the Assistant Warden, stating in pertinent part:

> On July 19, 2016, I was involved in a physical altercation that resulted in a broken knuckle to the left hand. Immediately thereafter, x-rays were taken which indicated the above mentioned injury. The injury promulgated caused Dr. Vazquez[[13]] to prescribe Loratabs [sic] 5 mg/500 mg for 3 days every 4 to 6 hours to alleviate the pain. The prescribed medication were [sic] not delivered or issued to me as ordered. At the time Dr. Vazquez ordered the medication, no temporary painkillers were provided. I suffered a total of 15 days of serious ongoing pain due to Vazquez' inadequate treatment and his deliberate indifference to treat a substantial medical condition.
>
> On August 2, 2016, I had to initiate a medical sick-call requesting a non-aspirin pain pill that does not contain the ingredient NSAIDs. Reason being is because my body has a serious allergic reaction that causes the skin to rash up, if taken. The non-aspirin was given to me but to no avail. The non-aspirin was . . . temporary until the surgery scheduled for August 11, 2016.
>
> On August 11, 2016, I was transported to the Reception and Medical Center ("RMC") where Dr. Ong performed the surgery. After the completion of the surgery, the M.D. wrote several orders which were follow up care,

---

[12] See FLA. ADMIN. CODE r. 33-103.006(3)(e), 33-103.008.

[13] The Court will use the correct spelling of Defendant's name: Vazquez.

follow up appointments, and pain medications
such as Loratabs [sic], Excedrin, along with
antibody [sic] Keflex 500 mg . . .
Ben[a]dryl[]; Oyster Shell calcium 500 mg . .
. that were prescribed by M.D. Ong F.M.D., the
surgeon.

. . . .

Since my return to Suwannee Correctional
Institution from (R.M.C.), I have not received
any prescription medication as ordered by Dr.
Vazquez or Dr. Ong. The orders were never
filled. The region doctor [has] rewritten the
order and prescription which was 600 mg
Ibuprofen when it is properly documented in my
institutional medical file[] "NO NSAIDs." I am
prescribed medication I am medically prevented
to take. I am still undergoing serious
existing ongoing pain. No medication[s] are
being given at this time.

. . . .

The nature of the relief requested is to
compel the medical provider to prescribe the
necessary medications needed. Also I am
requesting compensation for the unnecessary
infliction of pain and inadequate medical care
in the amount of $15,000.00 against Dr.
Vazquez and Centurion.

Id. at 4. On September 9, 2016, Figueroa denied Daniel's grievance,

stating in pertinent part:

The medical department at Suwannee CI Main
Unit is in receipt of your request for
Administrative Remedy or Appeal; it has been
received, reviewed & evaluated. Regarding
Medications written by Dr. Ong at RMC.

Orders written by the outside physician are
reviewed by the MD on site and he determines
if the medication[s] are medically necessary
and available on the formulary. Upon review of
the medications Dr. Ong prescribed[,] orders
for Cephalexin x14 days and Oyster-shell[,]

18

and both were filled on 8/15/16. Also on
8/15/16 Diphenhydr[a]mine was written x7 days
only by the onsite MD. On 8/23 you were
ordered Acetaminophen (Tylenol - not an
NSAID), 8/25 Amlodipine was filled and on 8/31
you were ordered and given Lortab x4 days
only. Your medication needs were addressed.

Id. at 5. Daniels appealed the institution's denial of his medical

grievance on September 28th, stating that the institution's

response did "not properly address this issue." See id. at 10,

Request for Administrative Remedy or Appeal to FDOC Secretary, Log

#16-6-41616. On March 3, 2017, Health Services Director Tom Reimers

denied Daniels' appeal on the merits, stating in pertinent part:

Your request for administrative remedy was
received at this office and it was carefully
evaluated. Records available to this office
were also reviewed.

Please be advised that an inmate has the
responsibility to write the grievances legibly
and if not then it can be returned to the
inmate without processing.

Please be advised that you cannot use the
grievance process for monetary gain and/or
tort claims.

It is determined that the response made to you
by Dr. Figueroa on 9/9/16 appropriately
addresses the issues you presented.

It is the responsibility of your health care
staff to determine the appropriate treatment
regimen for the condition you are
experiencing, including medication
prescriptions.

Should you experience problems, sick call is
available so that you may present your
concerns to your health care staff.

Id. at 12.

On September 19, 2016, Daniels submitted a medical grievance to the Warden, stating in pertinent part:

> On 9/19/16 I declared a medical emergency concerning the swelling of my left hand. I was immediately escorted to see the medical doctor by staff personnel. Upon arrival to medical, the doctor examined my hand thoroughly and determined that it was infected based on her expert opinion. I informed her that bacitracin ointment was being applied each time nurses changed my dressings. Of import, I apprised the doctor that I told them [nurses] that I was allergic to it and it is well-documented in my medical files, but, however, they were still carelessly applying the ointment. This was verified and I was given two antibiotics and some non-aspirins.
>
> Remedy: to approve this grievance based on negligence and carelessness.

Id. at 8, Request for Administrative Remedy or Appeal, Log #1609-230-211. On October 3, 2016, Vilchez denied the grievance, stating in pertinent part:

> Your request for Administrative Remedy or Appeal has been received, reviewed & evaluated.
>
> Investigation into your grievance reveals the following:
>
> The grievance format is not for opinions, venting and making general statements. It appears from your statements that this matter was addressed with the MD on 9/19/16. Nursing staff are following proper protocol and procedures in your care and treatment.

Id. at 9. Daniels appealed the institution's denial of his medical grievance on October 12th. See id. at 16, Request for

Administrative Remedy or Appeal to FDOC Secretary, Log #16-6-45607. On April 4, 2017, Health Services Director Reimers denied Daniels' appeal on the merits, stating in pertinent part:

> Your request for administrative remedy was received at this office and it was carefully evaluated. Records available to this office were also reviewed.
>
> It is determined that the response made to you by Dr. Vilchez on 10/3/16 appropriately addresses the issues you presented.

Id. at 18. Given this record of Daniels' exhaustion efforts, Defendants cannot establish a failure to exhaust the claims against them.

Next, Defendants contend that Daniels failed to name Vilchez, Vazquez, and Figueroa in the grievances when he knew their identities. See Vilchez Motion at 6; Vazquez and Figueroa Motions at 5-6. Notably, the PLRA does not mandate that a prisoner name a particular individual (who is later sued) in a grievance in order to properly exhaust his claim. See Jones, 549 U.S. at 219 (stating "exhaustion is not per se inadequate simply because an individual later sued was not named in the grievances"); Parzyck v. Prison Health Servs., 627 F.3d 1215, 1218-19 (11th Cir. 2010); see also Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000) ("[W]hile § 1997e(a) requires that a prisoner provide as much relevant information as he reasonably can in the administrative grievance process, it does not require that he do more than that."). Indeed, section 1997e(a)'s exhaustion requirement is designed "to alert

prison officials to a problem, not to provide personal notice to a particular official that he may be sued ...." Jones, 549 U.S. at 219 (quoting Johnson v. Johnson, 385 F.3d 503, 522 (5th Cir. 2004)).

Section 1997e(a) requires that prisoners complete the administrative review process in compliance with the prison's grievance procedures, so there is "time and opportunity to address complaints internally before allowing the initiation of a federal case." Woodford, 548 U.S. at 93 (citations and quotation marks omitted). Moreover, Florida's grievance procedure does not require that a prisoner identify each individual that he may later sue if the issue is not internally resolved. See Fla. Admin. Code r. 33-103.014 (stating the reasons for returning a grievance without a response on the merits). Here, although Daniels failed to identify Figueroa and Vilchez, the grievances accomplished § 1997e(a)'s purpose by alerting the prison to Daniels' medical issue and giving medical personnel an opportunity to resolve the issues before he initiated a lawsuit. Thus, Daniels sufficiently exhausted the claims in this action, and Defendants' Motions are due to be denied as to their assertions that Daniels failed to properly exhaust his claims against them.

### VI. Eighth Amendment Deliberate Indifference Claim

Daniels asserts that Defendants Centurion, Vilchez, Vazquez, and Figueroa violated his Eighth Amendment right when they were

deliberately indifferent to his medical needs. As to Centurion, he asserts that its custom was to provide only routine health care and withhold other expensive medical care. See Complaint at 6. The Eleventh Circuit has explained the requirements for a claim of constitutionally inadequate care:

> "The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones . . . ." Farmer, 511 U.S. at 832, 114 S.Ct. at 1976 (internal quotation and citation omitted).[14] Thus, in its prohibition of "cruel and unusual punishments," the Eighth Amendment requires that prison officials provide humane conditions of confinement. Id. However, as noted above, only those conditions which objectively amount to an "extreme deprivation" violating contemporary standards of decency are subject to Eighth Amendment scrutiny. Hudson, 503 U.S. at 8-9, 112 S.Ct. at 1000.[15] Furthermore, it is only a prison official's subjective deliberate indifference to the substantial risk of serious harm caused by such conditions that gives rise to an Eighth Amendment violation. Farmer, 511 U.S. at 828, 114 S.Ct. at 1974 (quotation and citation omitted); Wilson, 501 U.S. at 303, 111 S.Ct. at 2327.[16]

Thomas v. Bryant, 614 F.3d 1288, 1306-07 (11th Cir. 2010). "To show that a prison official acted with deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and a subjective inquiry." Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004) (quoting Farrow v. West, 320 F.3d 1235, 1243 (11th

---

[14] Farmer v. Brennan, 511 U.S. 825 (1994).

[15] Hudson v. McMillian, 503 U.S. 1 (1992).

[16] Wilson v. Seiter, 501 U.S. 294 (1991).

Cir. 2003)). First, the plaintiff must satisfy the objective component by showing that he had a serious medical need. <u>Goebert v. Lee Cty.</u>, 510 F.3d 1312, 1326 (11th Cir. 2007).

> "A serious medical need is considered 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" <u>Id.</u> (citing <u>Hill v. Dekalb Reg'l Youth Det. Ctr.</u>, 40 F.3d 1176, 1187 (11th Cir. 1994)). In either case, "the medical need must be one that, if left unattended, pos[es] a substantial risk of serious harm." <u>Id.</u> (citation and internal quotations marks omitted).

<u>Brown</u>, 387 F.3d at 1351. Next, the plaintiff must satisfy the subjective component, which requires the plaintiff to "allege that the prison official, at a minimum, acted with a state of mind that constituted deliberate indifference." <u>Richardson v. Johnson</u>, 598 F.3d 734, 737 (11th Cir. 2010) (per curiam) (describing the three components of deliberate indifference as "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence.") (citing <u>Farrow</u>, 320 F.3d at 1245); <u>Lane v. Philbin</u>, 835 F.3d 1302, 1308 (11th Cir. 2016) (setting forth the three components) (citing <u>Farrow</u>, 320 F.3d at 1245).

> In <u>Estelle</u>[17], the Supreme Court established that "deliberate indifference" entails more than mere negligence. <u>Estelle</u>, 429 U.S. at 106, 97 S.Ct. 285; <u>Farmer</u>, 511

---

[17] <u>Estelle v. Gamble</u>, 429 U.S. 97 (1976).

U.S. at 835, 114 S.Ct. 1970. The Supreme Court clarified the "deliberate indifference" standard in <u>Farmer</u> by holding that a prison official cannot be found deliberately indifferent under the Eighth Amendment "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Farmer</u>, 511 U.S. at 837, 114 S.Ct. 1970 (emphasis added). In interpreting <u>Farmer</u> and <u>Estelle</u>, this Court explained in <u>McElligott</u>[18] that "deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." <u>McElligott</u>, 182 F.3d at 1255; <u>Taylor</u>,[19] 221 F.3d at 1258 (stating that defendant must have subjective awareness of an "objectively serious need" and that his response must constitute "an objectively insufficient response to that need").

<u>Farrow</u>, 320 F.3d at 1245-46. Notably, the Supreme Court has stated that a plaintiff may demonstrate the deliberate indifference of prison officials by showing that they intentionally interfered with prescribed treatment or intentionally denied access to medical care. See <u>Estelle</u>, 429 U.S. at 104-05.

In the instant case, the Court addressed similar Eighth Amendment arguments in Defendants Vazquez and Figueroa's previously-filed motions to dismiss. In doing so, the Court stated, in pertinent part:

---

[18] <u>McElligott v. Foley</u>, 182 F.3d 1248 (11th Cir. 1999).

[19] <u>Taylor v. Adams</u>, 221 F.3d 1254 (11th Cir. 2000).

Defendants Figueroa and Vazquez seek dismissal of Daniels' Eighth Amendment claims against them, arguing that Daniels fails to provide sufficient facts that would entitle him to relief. Viewing the facts in the light most favorable to Daniels, as the Court must, the Court is not so convinced. Daniels has alleged facts sufficient to state a plausible claim under the Eighth Amendment. In reaching this conclusion, the Court observes that Daniels asserts that Figueroa and Vazquez denied him timely and proper medical care resulting in an infection, a second surgery, and lost mobility in his dominant hand. See Qamar v. C.I.A., 489 F. App'x 393, 396 (11th Cir. 2012) (per curiam) ("Deliberate indifference to the serious medical needs of prisoners violates the Eighth Amendment prohibition against cruel and unusual punishment, and prison officials act with deliberate indifference if they knowingly interfere with treatment prescribed by a physician.") (citing Washington v. Dugger, 860 F.2d 1018, 1021 (11th Cir. 1988)). The Court declines to find that these allegations if proven would fail to state a plausible claim for a violation of the Eighth Amendment. As such, Defendants' Motions are due to be denied as to Daniels' Eighth Amendment claims against them.

Order (Doc. 44) at 15-16. Again, reading Daniels' Complaint liberally, as this Court must do, he provides sufficient facts to state cognizable Eighth Amendment deliberate indifference claims against Defendants Vazquez and Figueroa as well as Defendant Vilchez. Moreover, Daniels has identified an unofficial Centurion custom or practice, as the "moving force," behind the alleged constitutional violation. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 693-94 (1978). Thus, Defendants Centurion, Vilchez, Vazquez,

and Figueroa's Motions are due to be denied as to Daniels' Eighth Amendment claim against them.

## VII. Qualified Immunity

Defendants Vilchez, Vazquez, and Figueroa alternatively assert that they are entitled to qualified immunity. As to qualified immunity, the Eleventh Circuit has stated:

> To invoke qualified immunity, a public official must first demonstrate that he was acting within the scope of his or her discretionary authority. Maddox v. Stephens, 727 F.3d 1109, 1120 (11th Cir. 2013). As we have explained the term "discretionary authority," it "include[s] all actions of a governmental official that (1) were undertaken pursuant to the performance of his duties, and (2) were within the scope of his authority." Jordan v. Doe, 38 F.3d 1559, 1566 (11th Cir. 1994) (internal quotation marks omitted). Here, it is clear that Defendant Officers satisfied this requirement, as they engaged in all of the challenged actions while on duty as police officers conducting investigative and seizure functions.

> Because Defendant Officers have established that they were acting within the scope of their discretionary authority, the burden shifts to [the plaintiff] to demonstrate that qualified immunity is inappropriate. See id. To do that, [the plaintiff] must show that, when viewed in the light most favorable to him, the facts demonstrate that Defendant Officers violated [Plaintiff's] constitutional right and that that right was "clearly established ... in light of the specific context of the case, not as a broad general proposition[,]" at the time of Defendant officers' actions. Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), overruled in part on other grounds by Pearson, 555 U.S. 223, 129 S.Ct. 808. We may decide these issues in either

> order, but, to survive a qualified-immunity
> defense, [the plaintiff] must satisfy both
> showings. <u>Maddox</u>, 727 F.3d at 1120–21
> (citation omitted).

<u>Jones v. Fransen</u>, 857 F.3d 843, 850-51 (11th Cir. 2017).

The Eleventh Circuit also has set forth the proper analysis when a district court considers a motion to dismiss based on qualified immunity.

> When presented with the officers' motions to
> dismiss, both our precedent and precedent from
> the Supreme Court instruct the district court
> to analyze whether, taking [Plaintiff]'s
> allegations as true, the . . . complaint
> asserted a violation of a clearly established
> constitutional right. <u>See</u> <u>Chesser v. Sparks</u>,
> 248 F.3d 1117, 1121 (11th Cir. 2001) ("[T]he
> [qualified immunity] defense may be raised and
> considered on a motion to dismiss; the motion
> will be granted if the 'complaint fails to
> allege the violation of a clearly established
> constitutional right.'") (quoting <u>Williams</u>,
> 102 F.3d at 1182)[20]; <u>Santamorena v. Ga.</u>
> <u>Military College</u>, 147 F.3d 1337, 1342 (11th
> Cir. 1998) (affirming grant of motion to
> dismiss on qualified immunity grounds because
> the "complaint fail[ed] to allege the
> violation of a clearly established
> constitutional right"). <u>See</u> <u>also</u> <u>Siegert v.</u>
> <u>Gilley</u>, 500 U.S. 226, 232, 111 S.Ct. 1789, 114
> L.Ed.2d 277 (1991) ("A necessary concomitant
> to the determination of whether the
> constitutional right asserted by a plaintiff
> is 'clearly established' at the time the
> defendant acted is the determination of
> whether the plaintiff has asserted a violation
> of a constitutional right at all. Decision of
> this purely legal question permits courts
> expeditiously to weed out suits which fail the
> test without requiring a defendant who rightly

---

[20] <u>Williams v. Ala. State Univ.</u>, 102 F.3d 1179, 1182 (11th Cir. 1997).

claims qualified immunity to engage in
expensive and time consuming preparation to
defend the suit on its merits."). . . .

Joseph v. Gee, 708 F. App'x 642, 643-44 (11th Cir. 2018) (per

curiam).

In the Motions, Defendants Vilchez, Vazquez, and Figueroa

assert that they are entitled to qualified immunity because they

did not violate Daniels' Eighth Amendment right. However, upon

review of the Complaint, the Court finds this assertion unavailing.

The Court has determined that Daniels has stated plausible Eighth

Amendment claims against the Defendants, and therefore, the

Defendants are not entitled to qualified immunity at this stage of

the litigation.[21] Accordingly, Defendants Vilchez, Vazquez, and

Figueroa's Motions based on qualified immunity are due to be

denied.

## VIII. Eleventh Amendment

To the extent Defendant Vilchez asserts that he is entitled to

Eleventh Amendment immunity,[22] this Court agrees.

The Eleventh Amendment provides that
"[t]he Judicial power of the United States

---

[21] See Order (Doc. 44) (finding that Defendants Vazquez and
Figueroa are not entitled to qualified immunity).

[22] Daniels acknowledges that the Eleventh Amendment bars his
claims for monetary damages against Defendants Vilchez, Vazquez,
and Figueroa in their official capacities. See Response at 6.
Notably, the Court previously granted Figueroa and Vazquez's
motions to dismiss, see Docs. 16, 29, as to Daniels' claims for
monetary damages against them in their official capacities, see
Order (Doc. 44) at 23, ¶ 1.

shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. It is well established that, in the absence of consent, "a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." Papasan v. Allain, 478 U.S. 265, 276, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (quotation omitted). The Eleventh Amendment also prohibits suits against state officials where the state is the real party in interest, such that a plaintiff could not sue to have a state officer pay funds directly from the state treasury for the wrongful acts of the state. Summit Med. Assocs., P.C. v. Pryor, 180 F.3d 1326, 1336 (11th Cir. 1999). . . .

Hayes v. Sec'y, Fla. Dep't of Children & Families, 563 F. App'x 701, 703 (11th Cir. 2014) (per curiam).

In Zatler v. Wainwright, 802 F.2d 397, 400 (11th Cir. 1986) (per curium), the Eleventh Circuit noted:

It is clear that Congress did not intend to abrogate a state's eleventh amendment immunity in section 1983 damage suits. Quern v. Jordan, 440 U.S. 332, 340-45, 99 S.Ct. 1139, 1144-45, 59 L.Ed.2d 358 (1979). Furthermore, after reviewing specific provisions of the Florida statutes, we recently concluded that Florida's limited waiver of sovereign immunity was not intended to encompass section 1983 suits for damages. See Gamble,[23] 779 F.2d at 1513-20.

Accordingly, in Zatler, the court found that the FDOC Secretary was immune from suit in his official capacity. Id. Insofar as Daniels

---

[23] Gamble v. Fla. Dep't of Health & Rehab. Serv., 779 F.2d 1509 (11th Cir. 1986).

may be seeking monetary damages from Defendant Vilchez in his official capacity, the Eleventh Amendment bars suit. Therefore, Defendant Vilchez' Motion is due to be granted as to Daniels' claim for monetary damages from him in his official capacity.

## IX. Physical Injury Requirement
## 42 U.S.C. § 1997e(e)

Next, the Court turns to Defendants' assertions that Daniels is not entitled to compensatory and punitive damages under 42 U.S.C. § 1997e(e) because he has not alleged any physical injuries that are more than de minimis, resulting from Defendants' acts and/or omissions. In Brooks v. Warden, 800 F.3d 1295 (11th Cir. 2015), the Eleventh Circuit addressed the availability of compensatory and punitive damages as well as nominal damages in suits brought by prisoners under § 1983. The Eleventh Circuit stated:

> [Plaintiff]'s claim, however, is further governed by the Prison Litigation Reform Act of 1995 [(PLRA)], Pub.L. No. 104–134, §§ 802–10, 110 Stat. 1321, 1366–77 (1996). The PLRA places substantial restrictions on the judicial relief that prisoners can seek, with the goal of "reduc[ing] the number of frivolous cases filed by imprisoned plaintiffs, who have little to lose and excessive amounts of free time with which to pursue their complaints." Al–Amin v. Smith, 637 F.3d 1192, 1195 (11th Cir. 2011) (quoting Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002)). The section of the Act at issue here, 42 U.S.C. § 1997e(e), reads this way:
>
> > No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional

31

> facility, for mental or emotional
> injury suffered while in custody
> without a prior showing of physical
> injury or the commission of a sexual
> act....
>
> This Court has held that § 1997e(e) applies to
> all federal civil actions, including
> constitutional claims brought under § 1983.
> See Harris v. Garner (Harris II), 216 F.3d
> 970, 984-85 (11th Cir. 2000) (en banc)....
>
> In this case, [Plaintiff] did not allege
> any physical injury . . . . Nevertheless, he
> sought "compensatory . . . punitive, and
> nominal damages" from [Defendant]. **Under the
> statute and our caselaw, an incarcerated
> plaintiff cannot recover either compensatory
> or punitive damages for constitutional
> violations unless he can demonstrate a (more
> than de minimis) physical injury.** See Al-Amin,
> 637 F.3d at 1198 (punitive); Harris v. Garner
> (Harris I), 190 F.3d 1279, 1286 (11th Cir.
> 1999) (compensatory), reh'g en banc granted
> and opinion vacated, 197 F.3d 1059 (11th Cir.
> 1999), opinion reinstated in relevant part,
> 216 F.3d 970. However, we have never had the
> opportunity in a published opinion to settle
> the availability of nominal damages under the
> PLRA. We do today, and we hold that nothing in
> § 1997e(e) prevents a prisoner from recovering
> nominal damages for a constitutional violation
> without a showing of physical injury.

Brooks, 800 F.3d at 1307-08 (emphasis added). Thus, to satisfy §

1997e(e), a prisoner must assert physical injury that is more than

de minimis. However, the injury does not need to be significant.

See Thompson v. Sec'y, Fla. Dep't of Corr., 551 F. App'x 555, 557

(11th Cir. 2014) (citation omitted); Dixon v. Toole, 225 F. App'x

797, 799 (11th Cir. 2007).

Taking Daniels' allegations as to his injuries as true, he asserts physical injuries that are greater than de minimis. The Court previously denied Defendants Vazquez and Figueroa's motions to dismiss to the extent they asserted that Daniels' request for monetary damages is precluded under § 1997e(e). The Court stated, in pertinent part:

> [Daniels] complains about a left-hand injury that is permanent and life-changing due to Defendants' alleged failure to timely and properly treat the wound and resulting infection. According to Daniels, he underwent a second surgery at RMC "to dig the stitches out" since the flesh had grown over the stitches because of the delay in removing the stitches. Complaint at 5. Given Daniels' assertions, his pain and discomfort that ultimately resulted in multiple sick call visits, an additional surgical procedure, and ongoing limitations of the range of motion of his hand cross § 1997e(e)'s de minimis threshold. See Thompson, 551 F. App'x at 557 n.3 (describing an approach of asking whether the injury would require a free world person to visit a doctor or emergency room) (citing Luong v. Hatt, 979 F. Supp. 481, 486 (N.D. Tex. 1997)).

Order (Doc. 44) at 22. For these same reasons, the Court finds that Daniels' alleged injuries cross § 1997e(e)'s de minimis threshold. Thus, Defendants' Motions are due to be denied to the extent that the Court finds Daniels' request for monetary damages is not precluded under § 1997e(e) because he alleges that he suffered physical injuries that are plausibly greater than de minimis.

Therefore, it is now

**ORDERED:**

1.    Defendant Centurion's Amended Motion to Dismiss (Doc. 53) is **DENIED.**

2.    Defendant Vilchez's Amended Motion to Dismiss (Doc. 54) is **PARTIALLY GRANTED** as to Daniels' claim for monetary damages from him in his official capacity. Otherwise, the Motion is **DENIED.**

3.    Defendants Vazquez and Figueroa's Amended Motions to Dismiss (Docs. 55, 56) are **DENIED AS MOOT** as to Daniels' claims for monetary damages from them in their official capacities. Otherwise, the Motions are **DENIED.**

4.    Defendants, **no later than July 10, 2019,** must answer or otherwise respond to the Complaint.

5.    The parties shall conduct discovery so the due date of any discovery requested is no later than **October 15, 2019.** Any motions relating to discovery shall be filed by **October 25, 2019.**

6.    All motions to dismiss and/or for summary judgment shall be filed by **November 29, 2019.**[24] This deadline is also applicable

---

[24] Any DVDs submitted as exhibits to a summary judgment motion should not contain a sticker-type label. Such labels inhibit the Court's ability to view the video footage. The case number and other relevant information should be written with a black marker on the DVD itself. Additionally, the Court requires the complete transcript of any deposition submitted as an exhibit.

to the filing of any motions or the raising of any affirmative defenses based on qualified immunity.

7. Responses to any motions to dismiss and/or for summary judgment shall be filed by **January 6, 2020.**

8. The parties are encouraged to discuss the possibility of settlement and notify the Court if their efforts are successful. In doing so, Plaintiff and Defendants are encouraged to maintain a realistic approach in making and/or considering any settlement offers. If the parties are unable to settle the case privately, and want a Magistrate Judge to conduct a settlement conference, they should notify the Court.

9. As to the taking of Plaintiff's deposition, if necessary, the Court grants permission to Defendants' counsel. Defendants' counsel must contact the Warden of Plaintiff's institution to arrange an appropriate time and place for the deposition.

10. Plaintiff is advised that any documents submitted for the Court's consideration must be legible. Filings written in pencil may be difficult to decipher, especially when electronically scanned. Therefore, Plaintiff is encouraged to use a black pen, not pencil. The Court may strike documents that are not in compliance with these instructions.

11.  The Court expects strict compliance with the Court's deadlines.

**DONE AND ORDERED** at Jacksonville, Florida, this 12th day of June, 2019.

MARCIA MORALES HOWARD
United States District Judge

sc 6/10
c:
Theron Daniels, FDOC #068947
Counsel of Record